**SO ORDERED.**

**SIGNED this 08 day of May, 2007.**



_____
**Dale L. Somers**
**UNITED STATES BANKRUPTCY JUDGE**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| In re: | |
| ROBERT LEON BLAGG and<br>KIMBERLY ANN BLAGG, | CASE NO. 05-18541<br>CHAPTER 7 |
| DEBTORS. | |

MEMORANDUM AND ORDER DENYING TRUSTEE'S
MOTION TO COMPEL TURNOVER OF FUNDS

On April 3, 2007, following oral argument, the Court took under advisement the Trustee's Motion to Compel Turnover of Funds. The Chapter 7 Trustee, Linda S. Parks ("Trustee"), appeared by Scott Hill of Hite, Fanning, & Honeyman, L.L.P. Debtors, Robert and Kimberly

Blagg ("Debtors") appeared in person and by James P. Rupper of Powell, Brewer, & Reddick, L.L.P. There were no other appearances. The Court has jurisdiction.[1]

The Trustee seeks an order pursuant to 11 U.S.C. § 542(b)[2] compelling the Debtors to turnover the estate's share of the Debtors' 2004 federal income tax refund, which was applied post-petition by the IRS in partial satisfaction of Debtors' 2003 income tax liability.[3] Trustee relies upon the doctrine of marshaling, as applied by *In re Steele*.[4] Debtors respond that marshaling does not apply under the circumstances of this case and the Trustee should not prevail.

---

[1] This Court has jurisdiction pursuant to 28 U.S.C. § 157(a) and §§ 1334(a) and (b) and the Standing Order of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's Bankruptcy judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective July 10, 1984. A motion for an order to turnover property of the estate is a core proceedings which this Court may hear and determine as provided in 28 U.S.C. § 157(b)(2)(E). There is no objection to venue or jurisdiction over the parties.

[2] This case was filed before October 17, 2005, when most provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 become effective. All statutory references to the Bankruptcy Code are to 11 U.S.C. §§ 101 - 1330 (2004), unless otherwise specified. All references to the Federal Rules of Bankruptcy Procedure are to Fed. R. Bankr. P. (2004), unless otherwise specified.

[3] The exact amount in controversy is not clearly stated by the Trustee. In the Motion, she states that she seeks turnover of "$3,448, representing the estate's share of debtors' 2004 state and federal tax refunds." Doc. 20. The pretrial order states the "Trustee claims that Debtors are indebted to the bankruptcy estate for the sum of $3,448.00 which was the amount sett off by the IRS for past due taxes." Doc. 51. Debtors' Exhibit B, a notice from the IRS dated April 24, 2006, gave notice that the IRS had applied a 2004 overpayment of $2,663 to Debtors' liability on their taxes for 2003. The stipulations of fact establish that the Debtors on August 14, 2006 paid the sum of $650.59 to the Trustee, which they represented to be their state income tax refund for the year 2004. All of the arguments presented by the Trustee and in defense by the Debtors focus upon the amount offset by the IRS and do not discuss the state tax refund. The Court therefore concludes that this controversy regards turnover of the $2,663 refund for tax year 2004 applied by the IRS to Debtors' 2003 taxes and will address only this issue.

[4] *Morris v. Steele (In re Steele)*, Case. No. 03-13393; Adv. No. 04-5265 (Bankr. D. Kan. Nov. 17, 2005).

2

**FINDINGS OF FACT.**

The pretrial order contains a joint stipulation of facts upon which the parties rely in submitting the Motion for determination. In addition, at oral argument counsel for the Debtors stated on the record two additional facts for inclusion in the stipulation, to which the Trustee did not object. Based upon the foregoing, the Court makes the following findings of fact.

Debtors filed for relief under Chapter 7 on October 13, 2005. Trustee Linda Parks is the duly appointed and acting case trustee. At the time they filed, Debtors owed federal income taxes for year 2003 in the amount of $5,761.97. The IRS did not have a lien to secure payment of these taxes. Debtors' 2004 federal income tax return was filed post-petition on March 6, 2005 and reflected that Debtors were entitled to a refund of $2,663. This right to refund, and a state income tax refund for 2004, are the only non-exempt assets of the estate.

In March and April 2006, the Trustee by letter requested Debtors to turnover their 2004 refund. On or about April 27, 2006, counsel for the Debtors provided the Trustee a copy of letter from the Department of Treasury stating that the 2004 refund of $2,663 had been applied to Debtors' tax liability for 2003, leaving a balance due for 2003 of $3,098.97. The Trustee continued to request turnover of the 2004 federal tax refund. Debtors did not comply, and the Motion was filed on May 17, 2006.

3

**ANALYSIS.**

    **A. Trustee's Theory of Recovery.**

Trustee contends in her Motion that she is entitled pursuant to § 542(b)[5] or § 521(3)[6] to turnover of the 2004 federal tax refund under the doctrine of marshaling of assets, as applied in *In re Steele*[7] and *In re Oliver*.[8] The Chapter 7 Trustee in *Steele* brought an action against the debtor for turnover of the estate's 48% interest in 2003 federal and state tax refunds attributable to the tax year in which debtor filed for relief. Federal and state authorities had set off less than 48% of the refunds to pay debtor's nondischargeable child support obligations and remitted the difference to the debtor. The Trustee urged the court to apply the doctrine of marshaling to require the debtor to pay to the estate 48% of the entire refund as if there had been no offset. Debtor responded that the estate's interest should be 48% of the net refund after the offset. The court identified the issue as "how to allocate a tax refund between the bankruptcy estate and the debtor where the government has setoff a portion of the refund to pay a prepetition child support

---

[5] The Court, without having fully considered the issue, questions § 542(b) as authority for the order requested by the Trustee if the Court were to find marshaling applicable. That subsection provides in part that "an entity that owes a debt that is property of the estate and that is matured . . . shall pay such debt to . . . the trustee." As applied to this case, that subsection would apply to the IRS, the entity that owed the refund to the Debtors, and would provide no basis for an order against the Debtors. Subsection 542(a) also would not be satisfied. That section requires that the property to be turned over to the Trustee be in "possession, custody, or control" of the turnover target. The Debtors have never had possession, custody, or control of the refunds and would not gain possession, custody, or control by the simple entry of an order stating that marshaling applies.

[6] Section 521(a)(3) provides that the debtor shall "cooperate with the trustee as necessary to enable the trustee to perform the trustee's duties under this title." Although § 521(a)(4) provides that the debtor shall surrender all property of the estate to the trustee, this subsection, like § 542(a), appears to require that debtors have possession or control of the property.

[7] *In re Steele*, Case No. 03-13393; Adv. No. 04-5265 (Bankr. D. Kan. Nov. 17, 2005).

[8] *In re Oliver*, Case No. 05-13356 (Bankr. D. Kan. Jan. 17, 2007).

4

obligation."[9]  It stated the doctrine of marshaling requires three elements: "(1) existence of two creditors with a common debtor; (2) the existence of two funds belonging to the debtor; and (3) the legal right of one creditor to satisfy his demand from either of the funds, while the other may resort to only one fund."[10]  It noted that the purpose of the doctrine is to prevent arbitrary action of a senior lienor from destroying the rights of a junior lienor or creditor having less security. Although noting that the case did not deal with the interests of lien holders, it found that the rights of pre-petition creditors would be adversely affected if the relief requested by the Trustee were not granted.  The Court therefore held that because debtor had benefitted from the set off of the refund to pay a debt that could have been collected from him post-discharge, the debtor should pay to the estate the entirety of the estate's interest in the refund.

The facts in *Oliver* are similar.  Debtors filed for relief on June 1, 2005.  Tax return for 2003 filed post-petition showed debtors were entitled to a refund of $4,690 for overpayment. The IRS set off $2,338.63 of the refund in payment of taxes owed for 2002.  The trustee sought an order that the debtors turnover the 2003 refund which had been applied to the 2002 taxes. The Court found no reason to distinguish the pending case from *Steele*, stating as follows:

> In the present case, the doctrine of marshalling as analyzed in
> *Steele* would also apply.  As in *Steele*, the bankruptcy debtor is the
> "common" debtor and has two creditors: the IRS and the
> unsecured creditors in bankruptcy.  Additionally, there are two
> 'funds" which belong to debtors.  There are the 2003 refunds,
> which were taken by the IRS.  And there are the 2005 refunds . . ..
> And as pointed out in *Steele*, the IRS would also have other
> property of the debtors from which it could collect.  Likewise the

---

[9] *In re Steele*, sl. op. at 3.

[10] *Id.*, sl. op. at  4.

5

IRS may a right to satisfy its claim from either of the "funds," while the trustee may resort to only the 2003 refund.[11]

### B. Debtor's Response.

Debtors contend that the doctrine of marshaling does not apply. They urge the doctrine requires that there be two creditors with liens on two funds in the hands of the debtors; that the two funds exist at the time of assertion of marshaling; and that there be one creditor who can satisfy his claim from either fund. They argue these conditions are not satisfied. Debtors submit that *Steele* erroneously applied the doctrine of marshaling.

### C. The Doctrine of Marshaling of Assets.

Marshaling of assets is an equitable doctrine designed to promote fair dealing and justice.[12] "Its purpose is to prevent the arbitrary action of a senior lienor from destroying the rights of a junior lienor or a creditor having less security."[13] The Kansas Supreme Court has described the doctrine as follows:

> . . . [T]he doctrine is that where a creditor has a lien on two funds in the hands of the same debtor and another creditor has a lien on only one of them, equity will compel the former to collect his debt out of that fund in his hands to which the latter cannot resort. The doctrine is an equitable one applicable only where both funds are in the hands of the common debtor of both creditors and where it can be applied with justice to all concerned, and will be applied only when that can be done without prejudice to the paramount creditor.[14]

---

[11] *In re Oliver*, sl. op. at 5.

[12] *Meyer v. U.S.*, 375 U.S. 233, 237 (1963).

[13] *Id.*

[14] *Bolman v. Comm'l Nat. Bank of Kansas City, Kan.*, 173 Kan. 155, 162, 244 P.2d 1175, 1181 (1952).

6

The doctrine benefits junior secured creditors. It "applies when a senior-secured creditor can collect on its debt against more than one property or fund held by the debtor, while a junior-secured creditor can proceed against only one of those sources."[15] Three elements must be present: "(1) a senior creditor with rights [liens] to two or more funds in which a common debtor has an interest; (2) a common debtor with an interest in two funds; and (3) a junior creditor with a lien on or interest in only one of the funds in which the common debtor has an interest."[16] It has been suggested that the traditional elements also include that the senior creditor or third parties not be prejudiced by application of the doctrine and that the invoking party be a secured creditor.[17]

"[T]he two funds or properties to be marshaled must exist at the time the equitable relief is sought, and the two properties must be in the hands of the common debtor at the time the marshaling proceeding is commenced."[18] For example, when only one and not two funds are in the hands of a receiver, marshaling asserted against the receiver had no application.[19] Generally the doctrine may be invoked only by a lien or secured creditor[20] for the benefit of such a

---

[15] 53 Am. Jur.2d *Marshaling Assets* § 11 (2007).

[16] 9B Am. Jur.2d *Bankruptcy* § 2019 (2007).

[17] Jacquelyn Michael Davis, *Marshaling of Assets in Bankruptcy*, 5 Bankr. Dev. J. 309, 309 (1987) (hereafter Davis).

[18] 53 Am. Jur.2d *Marshaling Assets* § 17 (2007).

[19] *Bolman v. Comm'l Nat. Bank of Kansas City, Kan.,* 173 Kan. at 162, 244 P.2d at 1181.

[20] 53 Am. Jur.2d *Marshaling Assets* § 18 (2007).

7

creditor.[21] Likewise, the doctrine is generally invoked not against the debtor, but against a creditor having a superior right in the funds securing the plaintiff's claim.[22]

The Code does not address marshaling of assets. Bankruptcy courts have invoked the doctrine under § 105.[23] For example, in *In re The Computer Room*,[24] the court granted a bank's adversary complaint to invoke marshaling where the facts fit squarely within the traditional elements of the doctrine. The plaintiff bank had a junior security interest in a specific account receivable for the debtor's work on a highway project, whereas a second secured creditor had a first priority security interest in all debtor's accounts, inventory, and contract rights. The court found all of the elements of marshaling satisfied and held the junior lien holder could properly apply the doctrine to require the first priority secured party to collect from the inventory and other accounts receivable before looking to the highway project account.

In bankruptcy, the doctrine has also been applied when the requirement that two funds must belong to the common debtor was not satisfied in circumstances regarding corporations and dealings with shareholders or guarantors.[25] Some of these departures from the traditional

---

[21] Moses Lachman, *Marshaling Assets in Bankruptcy: Recent Innovations in the Doctrine*, 6 Cardozo L. Rev. 671, 676 (1985) (hereafter Lachman).

[22] 53 Am. Jur.2d *Marshaling Assets* § 23 (2007).

[23] 2 *Collier on Bankruptcy* ¶ 105.04[3](Alan N. Resnick & Henry J. Sommer eds.-in-chief, 15th ed. rev. 2004) (future citations shall be to paragraph number only).

[24] *Peoples Bank of Tuscaloosa v. The Computer Room, Inc. (In re The Computer Room, Inc.)*, 24 B.R. 732 (Bankr. Ala. 1982).

[25] *Morris v. Jack B. Muir Irrevocable Trust (In re Muir)*, 89 B.R. 157, 161 (Bankr. D. Kan. 1988); *see* Davis, 5 Bankr. Dev. J. at 309.

application of the doctrine have been criticized.[26] Although a bankruptcy trustee has been held to have standing to invoke marshaling by virtue of lien creditor status under § 544, this has been questioned on the basis that there is "no indication in the legislative history of the Bankruptcy Code that section 544(a) was to be stretched to confer standing upon the trustee to invoke marshaling in favor of unsecured creditors."[27] It has been said that "allowing a Trustee in Bankruptcy to step into the shoes of a non-existent junior secured creditor stretches the doctrine too far."[28]

### D. The Elements for Marshaling are not Present.

The Trustee argues that marshaling can be invoked to require the Debtors to turnover the 2004 federal tax refund which was applied by the IRS to their 2003 tax liability. Relying on *Steele* and *Oliver*, Trustee asserts that (1) the Debtors have two creditors, the IRS and the Trustee, who stands in the shoes of unsecured creditors; (2) that there are two funds belonging to the Debtors, the 2004 refunds and post-petition property; and (3) that the IRS could satisfy its claim from either of these funds, since its claim is nondischargable, but the Trustee may look to only the 2004 refund.

The situation before this Court, as the situations before the Court in *Steele* and *Oliver*, does not satisfy the elements of traditional marshaling. First, this case does not involve the

---

[26] *E.g.*, Irving D. Labovitz, *Marshaling under the UCC: The State of Doctrine,* 99 Banking L. J. 440, (1982); Lachman, 6 Cardozo L. Rev. at 671; Davis, 5 Bankr. Dev. J. at 309 (1987); Many Emamzadeh, Comment, *Marshaling in Bankruptcy: Questioning the Recent Expansions to the Common Debtor Requirement*, 30 Duq. L. Rev. 309 (1992).

[27] Lachman, 6 Cardozo L. Rev. at 677.

[28] *In re The Computer Room, Inc.*, 24 B.R. at 734 n.5; See *Fed. Land Bank of Columbia v. Tidwell (In re McElwaney)*, 40 B.R. 66, 70 (Bankr. M.D. Ga. 1984) (trustee's request for marshaling was rejected where it would have benefitted unsecured creditors at the expense of a junior secured creditor of the debtor).

9

rights of a senior secured creditor with lien rights in two or more funds or properties of the Debtors or the estate. The IRS is not a senior secured creditor. It is stipulated that the IRS has no lien on any property of the Debtors or the estate.[29] The IRS merely holds an unsecured, non-dischargable claim for pre-petition taxes.

Second, there is no common debtor with an interest in the two funds from which the senior secured creditor could satisfy its claim. Neither the tax refund nor any post-petition assets are funds from which the IRS can satisfy its claim within the meaning of the doctrine of marshaling, which requires two funds subject to liens of the secured creditor. Although the IRS holds a claim against the Debtors, it is unsecured. The tax refund does not constitute a fund for purposes of marshaling. The Debtors are not and never were in possession or control of the tax refund. At the time of filing they held only an expectancy of a tax refund, if, after they filed their 2004 tax return, such was due. In addition, Debtors' post-petition property from which a nondischargeable claim may be satisfied does not constitute a specific fund in existence at the time marshaling is asserted.

Third, there is no junior lien creditor with a security interest in only one of the two funds from which the senior secured creditor can satisfy its claim. There is no second secured creditor. Here the Trustee is purporting to act of behalf of unsecured creditors.[30] Neither the Trustee nor the unsecured creditors have a lien on the tax refunds.

---

[29] If the IRS's right to offset pre-petition taxes due against pre-petition refunds under § 553 were considered a lien, the refunds would constitute only one of the two funds required for marshaling. There is no basis to argue that the IRS has a lien in exempt assets or post-petition property.

[30] The Court finds persuasive the argument that a Chapter 7 Trustee lacks standing to assert marshaling for the benefit of unsecured creditors. *See In re McElwaney*, 40 B.R. at 72.

Therefore, the conditions for the application of traditional marshaling are absent. The situation is not within the doctrine's purpose of the protection of junior secured creditors from the arbitrary action of a senior secured creditor. The facts of this case are very wide of the mark for application of traditional marshaling.

This Court declines to expand the traditional marshaling doctrine to apply to these circumstances. Neither the Trustee nor the *Steele* and *Oliver* opinions provide case law or secondary authorities where traditional marshaling was expanded in similar circumstances. As to the reason for application of marshaling in *Steele*, the Court stated, "[w]hile we do not deal here with the interests of lienholders, if the debtor's argument prevailed, the rights of his pre-petition creditors would be adversely affected."[31] The Court therefore applied marshaling "to effectuate a fair and equitable allocation of the refund and the burden to repay it to the estate."[32]

Adoption of marshaling in this case would be grounded in the equitable power of the Court recognized in § 105. Although that power is broadly stated, it is nevertheless limited. As stated by one treatise:

> [I]t should be universally recognized that the power granted to the bankruptcy courts under section 105 is not boundless and should not be employed as a panacea for all ills confronted in the bankruptcy case. Section 105 does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code or mandates of other state and federal statutes. As aptly put by one court, section 105 does not "authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity.[33]

---

[31] *In re Steele*, sl. op. at 4.

[32] *Id.*, sl. op. at 5.

[33] 2 *Collier on Bankruptcy* ¶ 105.01[2].

11

In other words, the court's equitable power under § 105 should not be used to apply marshaling of assets when to do so would disregard the Code.

To grant the Trustee's Motion in this case would result, in at least three respects, in an allocation of liabilities and imposition of burdens contrary to the Code. First, the granting of the Motion through application of marshaling would be appropriate only if the IRS was not entitled to the refund. Although the parties have not briefed the issue, the Court finds in this case the stipulated facts establish that the offset was permitted under § 553.[34] The Code permits the IRS to offset refunds attributable to tax years prior to filing against claims for pre-petition taxes, even "if the refund was not technically owing until after the commencement of the debtor's case."[35] The IRS merely offset a refund for overpayment of pre-petition 2004 taxes in partial satisfaction of pre-petition 2003 tax liability, and the allowance of offset under § 553 would provide the IRS a defense to a turnover action under § 542(b).[36] The Code has established a system of priorities which favors governmental entities with a right to offset tax refunds attributable to pre-petition tax years. Even if the Court were to regard this priority as not being fair and equitable, it would decline to rely upon § 105 and marshaling to change the result.

---

[34] *E.g., In re Tillery*, 179 B.R. 576, 577-78 (Bankr. W.D. Ark.1995) (holding for purposes of setoff a refund relates back to the tax year in which the taxes became an obligation and may be setoff against obligation for pre-petition tax years); *see* 5 *Collier on Bankruptcy* ¶ 553.03[2][b]. Although the exercise may have violated the stay, the consequence would not be invalidation of the right of offset.

[35] 5 *Collier on Bankruptcy* ¶ 553.03(2)(b)(i). *See* 11 U.S.C. § 362(b)(26) (2006) (providing that the stay of § 362(a) is not violated by the "setoff under applicable nonbankruptcy law of an income tax refund, by a governmental unit, with respect to a taxable period that ended before the date of the order for relief against an income tax liability for a taxable period that also ended before the date of the order for relief . . .").

[36] *See Jones v. Internal Revenue Service (In re Jones)*, ___ B.R. ___, 2006 WL 3408076, 98 A.F.T.R.2d 2006-7913 (Bankr. M.D. Ga. 2006) (adopting emerging view that federal tax overpayments are not property of the estate until the IRS has effectuated any offset to which it is entitled).

Second, the Trustee cites no Code section requiring Debtors to turnover to the Trustee property never in their custody or control.[37] In such circumstances, an order of turnover against the Debtors would result in detriment to the Debtors not authorized by the Code. Since Debtors never received the refund, they could comply with an order of turnover only by turning over post-petition earnings or exempt assets to the Trustee for the payment of claims against the estate. This outcome would be contrary to the Code definition of property of the estate and would be in direct conflict with the Code's creation of a fresh start for Chapter 7 debtors.

Third, the Court finds that debtors should not be called upon to perform the Trustee's duty of collection of the property of the estate held by the IRS. Marshaling is an equitable doctrine which generally is not applied against a debtor or to the prejudice of the debtor. Under the umbrella of marshaling, the Trustee should not be able to impose upon the Debtors the burden of collecting funds for the benefit of the estate or challenging the IRS' actions. Debtors' obligation under § 521(a)(4) to surrender to the Trustee property of the estate does not require debtors to collect debts owed to them and then surrender the funds to the Trustee.[38] Assuming that in a particular case the offset were not permitted under § 553, the Trustee should seek to recover from the IRS in the first instance. The debtors under the rationale of marshaling should not be burdened with an obligation to the Trustee not stated in the Code.

---

[37] Section § 542(b), cited by the Trustee, provides in part that "an entity that owes a debt that is property of the estate and that is matured . . . shall pay such to . . . the trustee." In this case, that subsection would apply to the IRS, the entity that owed the refund to the Debtors, and would provide no basis for an order against the Debtors. Subsection 542(a) also would not be satisfied. That section requires that the property to be turned over to the Trustee be in "possession, custody, or control" of the turnover target. The Debtors have never had possession, custody, or control of the refunds and would not gain possession, custody, or control by the simple entry of an order stating that marshaling applies.

[38] *In re Figueira*, 163 B.R.192 (Bankr D. Kan. 1993).

13

**CONCLUSION**.

For the foregoing reasons, the Court denies the Trustee's motion. The doctrine of marshaling does not apply to compel the Debtors to turnover to the Trustee the tax refund which was offset by the IRS in partial satisfaction of Debtors' liability for pre-petition taxes.

The foregoing constitute Findings of Fact and Conclusions of Law under Rule 7052 of the Federal Rules of Bankruptcy Procedure and Rule 52(a) of the Federal Rules of Civil Procedure. A judgment based upon this ruling will be entered on a separate document as required by Federal Rule of Bankruptcy Procedure 9021 and Federal Rule of Civil Procedure 58.

**IT IS SO ORDERED.**

###